## WELLS *v.* OREGON & C. RY. Co.

*(Circuit Court, D. Oregon. December 24, 1883.)*

1. DUTY OF RAILWAY COMPANY TO EXPRESS COMPANIES DOING BUSINESS ON ITS ROAD—MUST FURNISH EQUAL FACILITIES TO ALL.

The defendant was enjoined by this court to continue to furnish the plaintiff such express facilities on its road as it had been furnishing under an agreement between the parties, one provision of which is to the effect that the defendant will carry for the plaintiff not exceeding 8,000 pounds of "freight and express matter" over its road daily on a fast train for the sum of $1,000 per month, but the plaintiff must not deliver any such "freight" or "matter" at less than a stipulated price per pound. Thereafter the defendant commenced to furnish express facilities to the Northern Pacific Express Company upon the same terms and conditions, as it alleges, that it furnished them to the plaintiff, but allowed said Northern Pacific Express to deliver freight at a lower rate than the plaintiff was permitted to do, and thereupon the latter commenced to deliver freight for the same rates as said Northern Pacific, whereupon the defendant, conceiving itself aggrieved thereby, moved the court to modify the injunction so as to prevent the plaintiff from carrying any freight or express matter at the reduced rates, or to permit the defendant to increase the compensation to be paid it by the plaintiff so as to prevent the same. *Held*, (1) that the defendant has no right to discriminate between the express companies, but must furnish equal facilities to both; (2) that although the plaintiff is in effect required by the decree to deliver this 8,000 pounds of matter, or any portion of it, at not less than the prescribed rate, still, if the defendant permits the North-

ern Pacific to deliver any portion of the like 8,000 pounds carried for it at less than such rates, this is necessarily a permission to the plaintiff to do the same; (3) *semble*, that it is the duty of the defendant to use reasonable diligence to ascertain if either company is violating the condition upon which the facilities were granted to it, to the prejudice of the other, and, if so, to exclude it from the same; and certainly, where the failure to keep such condition is brought to its knowledge by the injured company or otherwise, unless it does interfere effectively, it will be presumed, in favor of the latter, to have waived such condition as to both.

2. EXPRESS FACILITIES.

Ferriage on the railway ferry of the defendant, if not absolutely an express facility, to which the plaintiff is entitled, becomes so when furnished to the Northern Pacific by the defendant.

Motion to Modify Injunction.

*Cyrus A. Dolph* and *Rufus Mallory*, for defendant.

*M. W. Fechheimer*, for plaintiff.

DEADY, J. On December 11, 1882, the defendant was enjoined and required by a decree of this court, given in this case, to furnish the plaintiff the express facilities on and over its lines of railway that it was then and had been doing, and upon the same terms. On November 16, 1883, the defendant filed a motion for the modification of said decree on the petition of the Oregon & Transcontinental Company, verified by the affidavit of the manager of said railway, Mr. R. Koehler, from which it appears that said company is a corporation formed under the laws of Oregon, and that since the date of said decree it has become the lessee of the defendant's lines of railway and acquired all its "rights and interests" in and to "the transportation business thereof," and particularly under a certain contract made between the plaintiff and defendant on October 14, 1876, concerning the transportation of express matter by the latter for the former, by which the cost of said transportation and the rates to be charged the public by the plaintiff were fixed, which contract was still in force at the date of said decree; that the plaintiff is now "wrongfully and fraudulently taking advantage of said injunction," and has reduced its rate of charges for "carrying the matter confided to it" over the defendant's road below that fixed by said contract, and below the "regular charges" of the lessee for transporting ordinary freight over the same, thereby increasing the business done by the plaintiff, to the injury of the "general freighting business" of the lessee; that the plaintiff is transporting over said road as "express matter" large quantities of merchandise not properly belonging to the business of carriers by express, for no other reason than that the charges are less than the regular charges for freight. The petition concludes with a prayer for the modification of the injunction, so "as to compel the plaintiff to limit its business to a proper and legitimate express business," and to charge such rates for the carriage of goods as are provided in said contract; and to enable the defendant, "by fair and proper charges, to protect itself from injury by the wrongful acts of the plaintiff."

On November 23d the plaintiff filed an answer to the petition, verified by the affidavit of its superintendent, Mr. Dudley Evans, by which it first denies in detail, but generally with a negative pregnant, all the allegations of the petition, and then admits and alleges that on October 14, 1876, it made a contract with the defendant for the transportation of its express matter over the railway of the defendant, as shown by a copy thereof annexed to said answer, from which, among other things, it appears that the plaintiff, in consideration of the payment by it to the defendant of $1,000 per month, was entitled to carry in a car set apart for its use, on each passenger train, 8,000 pounds of "express matter and freight," for which it was to charge on all lots of less than 100 pounds "not less than double first-class railway freights," and for lots of greater weight not less than one and a half times such rates, or the rates specified in a schedule therein, for all the stations between the then *termini* of the road,—Portland and Roseburg,—and in case "the freight" offered by the plaintiff for carriage should exceed 8000 pounds in weight, the defendant was bound to carry the same, and the plaintiff to pay therefor at the rate of one and a half the first-class rates then charged by the defendant. The contract also contains provisions to the following effect: (1) That neither the defendant nor its employes shall carry express matter on a passenger train; (2) that the defendant will not, as I construe the ambiguous language of the provision, contract with any other express company or association for "better facilities than are granted" to the plaintiff; and (3) that the contract shall go into effect on November 1, 1876, and continue in force for one year, and from year to year thereafter, unless notice is given by *one or both parties*, at least one month previous to the end of the contract year, of a withdrawal therefrom. The answer also alleges that the Northern Pacific Express Company is a corporation largely owned and controlled by the same persons who control the defendant corporation and the Oregon & Transcontinental Company; that for the past three or four months said express company has been and still is doing an express business on the defendant's railway, and that it is afforded thereon more and better facilities at cheaper rates than the plaintiff; that said express company is permitted to carry "freight and express matter" at rates much less than the regular railway rates, and that it has threatened and still threatens to carry "freight and express matter" for 10 cents per 100 pounds less than the plaintiff may charge for the same service; and that said Oregon & Transcontinental and express companies are by such means attempting to injure and destroy the business of the plaintiff. The answer also contains an allegation to the effect that the plaintiff has never carried on any one train over 8,000 pounds of matter, nor on an average over 3,000 pounds. On the same day the defendant filed a reply, verified by the affidavit of said manager, to the effect that by the agreement with the Northern Pacific Express Company it is to have the same facilities and upon the same

terms as the plaintiff, and not otherwise, and that if said express company has carried "freight and express matter" over the road at less than the prescribed rates, it has been done without such manager's knowledge or consent, and in violation of the terms of the contract.

On the argument it was conceded that the Oregon & Transcontinental Company, not being a party to this suit, could not be directly heard in this matter, but although no direct attempt was made to prove that it had become the lessee of the road as alleged, yet the fact was tacitly admitted. On the hearing the plaintiff read five affidavits, including one of its superintendent, from the latter of which it appears that the plaintiff is carrying and intends to carry freight and express matter at as low rates as the Northern Pacific Express Company, but not lower; and that within one week before the filing of this motion, he informed the manager of the defendant's road that said express company was carrying freight at 30 per centum below first-class railway rates. From the other of these affidavits, none of which are contradicted in any particular, it satisfactorily appears that the Northern Pacific Express is carrying between Roseburg, Oakland, and Eugene and Portland for at least 50 per centum less, on an average, than the rates specified in the contract of October 14, 1876. And upon the whole case it appears that the plaintiff intends, and is endeavoring, to carry at as low rates as the Northern Pacific for the purpose of preserving its business, and not otherwise.

Before proceeding to the consideration of the particular question arising upon this motion, it may be well to glance at the origin of this controversy. This suit was commenced on December 11, 1882, when an order was made that the defendant show cause why it should not be enjoined as prayed in the bill, and that in the mean time it be so restrained. On March 19, 1883, after full argument, a preliminary injunction was allowed. 8 Sawy. 600; [S. C. 15 FED. REP. 561.] This injunction is still in force, the case having since been heard on a demurrer to the bill, which was overruled by Mr. Justice FIELD. [S. C. 18 FED. REP. 517.] It also appears that before the commencement of the suit that the defendant gave the plaintiff notice that it could not have any express facilities on its road after that year, as it intended to do the express business itself. And, *first*, my impression is that the contract of October 14, 1876, is no longer in force, *proprio vigore*, between the parties. "One of both parties," meaning, I suppose, either party, could terminate and annul the contract at the end of any year, by giving notice of its intention to withdraw from it, and, as the defendant appears to have given such notice, it follows that the compact, as such, is at an end. The relations between the plaintiff and defendant, and their reciprocal obligations, are now prescribed and measured by the decree of this court. In making this decree it adopted for the time being, as a convenient and just definition and enumeration of proper express facilities, and the terms and conditions upon

which they should be furnished, the state of things or relations and obligations then existing between the parties. And this, of course, had the effect to prolong the provisions of this contract applicable to the subject-matter, under which the parties had been acting for six years, and continue them in force as a part of the decree of the court. And, *second,* in canvassing the motives and acts of the parties, it must be borne in mind that the defendant desired and intended to withdraw all express facilities from the plaintiff for the purpose of taking the business exclusively into its own hands, and that although it was prevented from excluding the plaintiff from its road and has not directly undertaken to conduct the business itself, yet it is furnishing facilities to a company that is necessarily a rival of the defendants, and appears to be closely allied, if not identical in interest, with itself.

Upon the case made there does not appear to be any ground for the complaint that the defendant is carrying more matter or of a different character from that it is entitled to; while it does appear from admission of counsel that the defendant is carrying the Northern Pacific wagons on its railway ferry across the Willamette river at this place free of charge, while it compels the plaintiff to pay for a like service at the regular rates. Whether this ferriage is an absolute express facility may be a question, but I am quite sure that if the defendant furnishes it to the Northern Pacific free of charge, it must do the same for the plaintiff. It cannot discriminate against either, but must treat both alike.

In the nature of things, there can be no absolute and prescribed definition of "express matter." Like the phrase "express facilities," its scope and meaning may be modified by circumstances. And so long as the express company pays the railway company an agreed sum for so much space in a car, or weight carried therein, or one and a half times first-class railway rates for whatever it carries over its road, there is no need of any definition. It defines itself, and includes everything that the express company can get or afford to carry on those terms. And if it carries all the freight and express matter that goes over the road, it works no injury to the defendant, but a benefit.

Under the arrangement between the plaintiff and defendant, the former is entitled to carry 8,000 pounds of either "freight" or "express matter," if there is any difference between them, once a day each way, over the road of the latter upon the payment of $1,000 a month, and as much more as it may desire upon the payment therefor at the rate of one and a half first-class railway rates. But, so far at least as the 8,000 pounds is concerned, the plaintiff is bound to charge the public the enhanced rates prescribed in the agreement. This condition was intended for the benefit of the defendant, and the observance of it might work to its advantage in this way: If 8,000 pounds of freight is offered on a given occasion, and only 1,000 of it would bear carriage at express rates, the defendant would carry the other 7,000

pounds at railway rates, upon a slow train, and get the same compensation from the express company as if the latter had carried the whole of it. But as to the freight carried by the plaintiff in excess of 8,000 pounds, and for which it must pay, not a lump sum, but one and a half times first-class railway rates, it can make no difference to the defendant how light are the charges of the plaintiff, nor how much freight it may carry. But the plaintiff, in carrying any portion of the 8,000 pounds for less than the stipulated rates, is violating the contract or terms upon which it is entitled to the facilities it enjoys, unless the defendant by its conduct has waived this condition of the contract, or furnished the plaintiff with an excuse or justification for not keeping it.

By the law of this case, until otherwise established by the supreme court, the defendant is bound to furnish the express company with reasonable facilities for the conduct of its business, and if there is more than one company doing business over its road it must furnish equal facilities to all. To deal fairly and justly in this respect, and according to its obligation, the defendant must serve the express companies equally, and neither directly nor indirectly favor one or hinder the other. Whatever terms or favors it extends to one it must extend to the other, because the other becomes thereby entitled to them. No discrimination can be allowed, but equality of service, conditions, and compensation is the fundamental rule governing the business or transaction.

But, says the counsel for the defendant, we have made the same terms with these express companies, and if the Northern Pacific is delivering freight at less than the stipulated rates, we are not aware of it, and if we were, we are not responsible to the plaintiff for it. If the plaintiff is injured by the conduct of the Northern Pacific in this respect, it must seek a remedy against that company. A grosser misconception of the relations and rights of these parties could hardly have been expressed in so few words. These express companies are strangers to each other. They are each dealing with the defendant, and their relations are with it and not one another. Whatever facilities or favors the defendant extends or permits to one, it must extend or permit, upon the same terms, to the other. It is therefore bound, I think, to exercise reasonable diligence to ascertain whether either of them is violating the contract or condition under or on which it is doing business on the road to the prejudice of the other,—as by delivering freight at less than the stipulated or prescribed rates,—and if so, to take the proper measures to prevent a continuance or repetition of such conduct. Certainly, if it is brought to the knowledge of the defendant that the Northern Pacific is cutting rates, it would be its duty to exclude the latter from its road, unless it intends to permit the plaintiff to do the same thing. And in such cases if it takes no steps to prevent the Northern Pacific from carrying for less than the established rates, the inference must be that the defendant per-

mits it to do so, and therefore it ought not to be heard to object if the plaintiff does the same. And if the defendant was ignorant of the conduct of the Northern Pacific, because it was willfully blind to it, or did not care to know the fact, the same consequence would follow.

The defendant has ascertained that the plaintiff is delivering freight below the stipulated rates, and doubtless might as easily and readily have found that in so doing it was merely following of necessity the example of the Northern Pacific. Indeed, the attention of the manager of the defendant was directly called to the fact that this company was cutting rates, by the superintendent of the plaintiff, before this proceeding was commenced. But nothing was done about it, and the defendant seems to have acted upon the theory that it could evade the injunction by permitting a company, which is either in fact itself or its close ally in interest, to carry for one half the rates the plaintiff is required to charge, and thereby destroy the latter's business and drive it off the road. But the law is not so vain a thing as this, and it will look below the surface of such a subterfuge and protect the plaintiff in the right to compete for business over the road within the limits which the defendant allows or permits to the Northern Pacific. The defendant is not entitled on the case made to any modification of the injunction or interference of the court.

This conclusion is fully sustained by the rulings in the following cases: *Dinsmore* v. *Louisville, etc., Ry. Co.* and *Southern Exp. Co.* v. *Nashville, etc., Ry. Co.* 2 FED. REP. 465; *Southern Exp. Co.* v. *Louisville, etc., Co.* 4 FED. REP. 481; *Texas Exp. Co.* v. *Texas, etc., Ry. Co.* and *Same* v. *International, etc., Ry. Co.* 6 FED. REP. 427; *Southern Exp. Co.* v. *Memphis, etc., R. Co.* 8 FED. REP. 799.

The motion is disallowed, at the costs of the defendant.